# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

MICHAEL NSIEN and UZOAMAKA NSIEN, )
                        Plaintiffs, )
v. ) Case No. 16-CV-530-JED-JFJ
COUNTRY MUTUAL INSURANCE )
COMPANY d/b/a COUNTRY FINANCIAL, )
a foreign corporation, )
                        Defendant. )

## OPINION & ORDER

Before the Court is the Motion for Summary Judgment by Defendant Country Mutual Insurance Company ("Country Mutual") (Doc. 44). Country Mutual filed this motion on November 9, 2018, yet Plaintiffs Michael and Uzoamaka Nsien ("Mr. and Ms. Nsien") failed to submit a response within twenty-one days as required by LCvR7.2(e). The Court granted Plaintiffs additional time to respond, setting the new deadline at January 18, 2019.

Plaintiffs filed their response (Doc. 51) on January 7, but the Court observed that many of the factual assertions made in the response were not supported by citations to any materials in the record. The Court then instructed Plaintiffs that they could submit a revised response to the summary judgment motion by January 18. Plaintiffs submitted a revised response (Doc. 54) on January 18, which consisted of a signed declaration and several exhibits.

After Country Mutual submitted its reply (Doc. 55), Plaintiffs filed additional exhibits (Doc. 56) related to the summary judgment motion. Country Mutual subsequently obtained leave to file a supplement in response to Plaintiffs' new exhibits. One day before Country Mutual filed its supplement (Doc. 60), Plaintiffs again filed more exhibits (Doc. 59). Because Country Mutual has had an opportunity to respond to the first batch of additional exhibits, the Court will consider

those exhibits in this Opinion. However, the second batch of exhibits, filed on January 31, will not be considered. Not only are these exhibits untimely, they appear completely unrelated to the claims in the Complaint. Thus, Defendant's motion for leave to file a second supplement (Doc. 62) is **moot**.

I.      **Background**

The following facts are supported by evidence in the record and are construed in favor of Plaintiff, the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

On November 19, 2015, Country Mutual issued Plaintiffs an automobile insurance policy, designated as Policy Number A35A5585915 (the "Auto Policy"). (Doc. 44-4). The Auto Policy provided uninsured/underinsured motorist coverage limits of $100,000.00 and medical payments of $10,000 per person. (*Id.*). The total premium amount for the Auto Policy, plus a special tenants endorsement, was $2,099.99. (*Id.*).

On January 28, 2016, Country Mutual sent Plaintiffs a Premium Notice advising that the total premium amount of $1,970.23 was due on the Auto Policy and an umbrella policy by February 14, 2016. (Doc. 44-5 at 1).[1] The Notice stated: "To continue coverage under your policy, your bill must be paid by the due date. If you fail to pay by the due date, your policy will terminate on that date." (*Id.*). On February 23, 2016, Country Mutual sent Plaintiffs a Notice of Cancellation stating that the Auto Policy would terminate on March 6, 2016, if the total billed amount of $1970.23 was not paid. (Doc. 44-6).

Plaintiffs insisted that several of their payments to Country Mutual were not reflected in the invoice for $1970.23. (Doc. 54 at 1). Country Mutual underwriter "Mr. David" and/or agent Andrea Pittman informed Plaintiff Michael Nsien ("Mr. Nsien") that if he paid $450 by March 4,

---

[1] The page numbers referenced in this Opinion are those found in the header of each document.

2016, the policy would remain in effect. (*Id*. at 1, 3). Accordingly, Plaintiffs made a payment of $450 to Country Mutual on March 4, 2016. (*Id*. at 9). Mr. David further promised Mr. Nsien that he would investigate the alleged prior payments and would generate a new invoice to be due on March 31. (*Id*. at 1, 3).

On March 4, 2016, Country Mutual sent a letter to Plaintiffs thanking them for their payment of $450 but stating that they had "underpaid with an amount of $448.17." (Doc. 44-7). The letter went on to say that Country Mutual was "unable to reinstate [Plaintiffs'] policy(ies) at this time." (*Id*.). Country Mutual then sent a Premium Notice, dated March 8, 2016, representing that Plaintiffs owed $574.97, due "immediately after receipt" of the notice. (Doc. 44-8). On March 23, 2016, a Demand Notice was sent to Plaintiffs stating that their "policy(ies) previously terminated with a remaining balance of $574.97" and that "[c]ollection action may be taken if payment is not received." (Doc. 44-9). On March 31, 2016, Plaintiffs made a payment of $575. (Doc. 54 at 10).

Meanwhile, on March 21, 2016, Plaintiffs were involved in a motor vehicle accident. Plaintiffs filed a claim with Country Mutual, but Country Mutual refused to pay on the claim, asserting that Plaintiffs' coverage had lapsed between March 6, 2016, and March 31, 2016. (*See* Doc. 44-11). Plaintiffs then filed suit against the other driver involved in the accident, Mr. Jose Reyes Ramirez.[2] Plaintiffs ultimately settled with Mr. Ramirez for $30,000. (Doc. 44-3 at 2 [Nsien Dep. p. 196]).

On May 3, 2016, Country Mutual sent a letter to Plaintiffs that stated in relevant part:

> As requested, the following is verification of Personal Auto Insurance coverage and claim history.

---

[2] Also spelled "Remirez" in some of the submitted materials.

> Personal Auto Policy AA5585915 was issued effective 11/19/2015 and terminated effective 05/03/2016.

(Doc. 54 at 11). The letter went on to provide information regarding the March 21, 2016, claim reported under the Auto Policy. The letter stated that $0.00 was paid on the claim, $0 was subrogated, and the status of the claim was "closed." (*Id.*).

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The courts thus must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

## III. Analysis

### A. Breach of Contract

Defendant Country Mutual argues that it is entitled to judgment as a matter of law on Plaintiffs' breach of contract claim because Plaintiffs' coverage had lapsed when the March 21, 2016, accident occurred. After carefully reviewing the evidence submitted by the parties, the Court finds that a genuine dispute exists as to whether Plaintiffs' coverage had indeed lapsed at the time of the accident. Specifically, the Court finds that the May 3, 2016, letter from Country Mutual stating that Plaintiffs' Auto Policy "was issued effective 11/19/2015 and terminated effective

4

05/03/2016" suffices to put the issue of Plaintiffs' coverage in the month of March in genuine dispute. (*See* Doc. 54 at 11).

Country Mutual asserts in its supplemental brief that the purpose of this letter was to advise Plaintiffs' potential new insurer, Farmers Insurance, "that the Plaintiffs previously had coverage with [Country Mutual], the date Plaintiffs first had such coverage, the ultimate termination date of such coverage, and the claims reported under the policy." (Doc. 60 at 10). According to Country Mutual, the letter "was not intended to demonstrate that the Plaintiffs had uninterrupted coverage." (*Id.*). This explanation, unsupported by any evidence in the record, fails to take this issue out of dispute.

The Court also notes that the record is far from clear as to whether Plaintiffs owed the amount Country Mutual claims they owed prior to the alleged lapse in coverage. Though Country Mutual has submitted a billing schedule (Doc. 44-12) meant to support its theory that Plaintiffs owed $1,990.23 before their policy was allegedly terminated due to nonpayment, the billing schedule is nearly indecipherable without an accompanying affidavit. For example, the billing schedule seems to support Plaintiffs' claim that they made a payment of $345.92 on January 15, 2016, even though Country Mutual, in its supplemental brief, asserts otherwise. (*See* Doc. 60 at 5-6). Plaintiffs have also provided evidence of a $351.83 payment on December 24, 2015, yet this payment does not appear anywhere on the billing schedule. (*See* Doc. 56 at 3). Drawing all reasonable inferences in favor of the non-movant, as is appropriate at the summary judgment stage, the Court finds the question of whether Plaintiffs' insurance coverage lapsed in March 2016 due to nonpayment of premiums must be left for the jury.

Country Mutual also argues that Plaintiffs' settlement with Mr. Ramirez, the driver at fault for the March 21, 2016, accident, bars uninsured/underinsured (UM/UIM) recovery by Plaintiffs

for two reasons: (1) the settlement was less than Mr. Ramirez's liability limits, and (2) the settlement destroyed Country Mutual's right of subrogation against Mr. Ramirez.

It is undisputed that Mr. Ramirez's policy limits were $25,000 per person and up to $50,000 for a single accident. (Doc. 44-2). Country Mutual has provided some evidence suggesting that the $30,000 settlement between Plaintiffs and Mr. Ramirez was broken down into separate settlements of $20,000 for Mr. Nsien and $10,000 for Ms. Nsien. (*See* Doc. 60-10 at 1). Country Mutual cites Plaintiffs' settlement as proof that Plaintiffs' claims did not exceed Mr. Ramirez's liability coverage.

The Court is not persuaded that settlement for less than the tortfeasor's liability limits after the UIM insurer has refused to pay the claim necessarily proves that the claim did not exceed the available liability coverage. Country Mutual cites Oklahoma Court of Civil Appeals case *Porter v. State Farm Mutual Automobile Insurance Co.*, which admittedly supports Country Mutual's stance:

> The act of accepting less than the liability-policy limits and releasing [the tortfeasor] from further liability establishes that the claim does not exceed the available liability coverage. In other words, Plaintiff cannot prove [the tortfeasor] was underinsured.

*Porter*, 231 P.3d 691, 694 (Okla. Civ. App. 2010). However, pursuant to *Okla. Stat.* tit. 20, § 30.5, "[n]o opinion of the Court of Civil Appeals shall be binding or cited as precedent unless it shall have been approved by the majority of the justices of the Supreme Court for publication in the official reporter." The *Porter* case was released for publication in the Pacific Reporter "by Order of the Court of Civil Appeals of Oklahoma," not by the Oklahoma Supreme Court. *Porter*, 231 P.3d at 691. Moreover, in *Sexton v. Continental Casualty Co.*, the Oklahoma Supreme Court brought up the question of whether there can be UM/UIM coverage once an insured has settled for less than the liability policy limits, but the Court specifically declined to answer the question at

6

that time. 816 P.2d 1135, 1136 (Okla. 1991). This Court has been unable to find a case since *Sexton* in which the Oklahoma Supreme Court has taken up this issue. As a result, the Court finds that Plaintiffs' settlement with Mr. Ramirez for less than his liability limits is not conclusive as to whether Plaintiffs' claim exceeded the available liability coverage of the tortfeasor.

As for the second prong of Country Mutual's argument, Oklahoma courts have established that "[s]ubrogation is a doctrine the law has devised for the benefit of one secondarily liable *who has paid* the debt of another." *Phillips v. New Hampshire Ins. Co.*, 263 F.3d 1215, 1223 (10th Cir. 2001) (quoting *Sexton*, 816 P.2d at 1138) (emphasis in original). "[W]hen an insurer repudiates its contractual obligation to pay a UM claim by denying that a contractual relationship with an alleged insured even exists, its right to subrogation never arises." *Id*. Thus, the insurer "cannot later 'resurrect the insurance contract' and claim that its subrogation rights have been impaired by settlement with the tort-feasor." *Id*. (quoting *Sexton*, 816 P.2d at 1139). Here, Country Mutual denied Plaintiffs' claim arising from the March 21, 2016, accident, reasoning that their "policy was not in force at the time of the loss." (Doc. 44-11). As a result, Country Mutual cannot now claim that Plaintiffs cut off its subrogation rights by settling with the tortfeasor.

For the reasons discussed above, the Court **denies** Country Mutual's motion for summary judgment on Plaintiffs' breach of contract claim.

### B. Punitive Damages

Punitive damage awards in Oklahoma are governed by *Okla*. *Stat*. tit. 23, § 9.1 ("Section 9.1"). Section 9.1 states:

> A. In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, award punitive damages for the sake of example and by way of punishing the defendant based upon the following factors:

1. The seriousness of the hazard to the public arising from the defendant's misconduct;

2. The profitability of the misconduct to the defendant;

3. The duration of the misconduct and any concealment of it;

4. The degree of the defendant's awareness of the hazard and of its excessiveness;

5. The attitude and conduct of the defendant upon discovery of the misconduct or hazard;

6. In the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and

7. The financial condition of the defendant.

A "Category I" award may be given when the jury finds by clear and convincing evidence that the defendant has been guilty of reckless disregard for the rights of others. *Id*. § 9.1(B). A "Category I" award may not exceed the greater of $100,000 or the amount of actual damages awarded. *Id*. A "Category II" award may be given when the jury finds by clear and convincing evidence that the defendant acted intentionally and with malice towards others. *Id*. § 9.1(C). A "Category II" award may not exceed the greatest of $500,000, twice the amount of actual damages, or the increased financial benefit derived by the defendant as a direct result of the conduct causing the injury. *Id.* Finally, a "Category III" award may be given where the jury finds by clear and convincing evidence that the defendant acted intentionally and with malice towards others and the "court finds that there is evidence beyond a reasonable doubt that the defendant acted intentionally and with malice and engaged in conduct life-threatening to humans." *Id*. § 9.1(D). A Category III award may be in any amount the jury deems appropriate. *Id.* In its motion, Country Mutual argues that the facts cannot support any category of punitive damages.

Resolving all factual disputes and drawing all reasonable inferences in favor of the non-moving party, the Court finds that there are genuine issues of material fact as to Country Mutual's conduct in handling Plaintiffs' insurance claim. Subsequently, the Court finds that summary judgment on the issue of punitive damages is inappropriate at this time.

### C. Bad Faith Claim

Lastly, Country Mutual argues that Plaintiffs' bad faith cause of action fails as a matter of law because Plaintiffs' loss was not covered by the Auto Policy. To make out a prima facie case of bad faith under Oklahoma law, Plaintiffs must show: (1) they were covered under an automobile liability insurance policy issued by the insurer and the insurer was required to take reasonable actions in handling their claim, (2) the actions of the insurer were unreasonable under the circumstances, (3) the insurer failed to deal fairly and act in good faith toward Plaintiffs in handling their claim, and (4) the breach or violation of the duty of good faith and fair dealing was the direct cause of any damages sustained by the Plaintiffs. *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005).

Country Mutual asserts that Plaintiffs' loss was not covered by the Auto Policy due to Plaintiffs' failure to pay their premiums, thus Country Mutual had a good faith belief that withholding payments under the policy was justifiable. The Court rejects this argument, given there is a genuine dispute of fact concerning Plaintiffs' coverage at the time of the March 21, 2016, accident. Drawing all reasonable inferences from the evidence in favor of the non-movants, the Court finds that Country Mutual has not met its burden to show that it is entitled to summary judgment on Plaintiffs' bad faith claim.

**IV.     Conclusion**

For the foregoing reasons, Defendant Country Mutual's Motion for Summary Judgment (Doc. 44) is **denied**.  Defendant's motion for leave to file a second supplemental brief (Doc. 62) is **moot**.  Defendant's motion for oral argument (Doc. 63) is **denied.**

SO ORDERED this 12th day of February, 2019.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE